## Case No. 7,931.

KRAUSKOPP v. AMES.

[7 Pa. Law J. 77; 4 Pa. Law J. Rep. 100.]

District Court, E. D. Pennsylvania. Aug. 3, 1846.

SHIPPING—PASSENGERS—PUNISHMENT—USE OF FORCE.

1. A master of a ship must show not only a breach of some regulation before venturing to use force to a passenger, but a clear necessity for the exercise of that degree of force.

2. No punishment higher than a reprimand can ever be inflicted on a passenger, without a conference with the other officers of the ship, and an entry of the facts into the log-book.

This was a proceeding in admiralty to recover damages for a personal tort committed by the respondent [James B. Ames, master of the American brig Rebecca] against the libellant [William Krauskopp] on the high seas. The libel asserted that the libellant, while a passenger on board the Rebecca, during a voyage from Rotterdam to Philadelphia in the month of June, 1846, was assaulted and severely beaten by the respondent, then in command as master. The answer admitted the assault and battery; but alleged impropriety of conduct on the part of the libellant towards the officers, the crew, and his fellow passengers, disobedience and refusal or neglect to obey lawful orders, insolence and irritating demeanor when reprimanded, and general habitual turbulence of deportment. It then proceeded to justify the violence complained of, asserting that the libellant at the time in question "was endangering the safety of the vessel, and the lives of all on board." The libellant, it affirmed,

was discovered in the act of burning a piece of tarred canvass belonging to the brig, for which he was reprimanded by the captain; that he replied to the captain in an abusive and scandalous manner, by calling him, in German, a rascal, and applying to him many abusive and vulgar epithets; that he (the libellant) seized with one hand an iron chain-hook, and with the other a heavy billet of wood, with which he threatened to strike the captain, and taunted him to fight, and that the captain then seized a small line, with which he struck the libellant four or five blows on the back.

Mr. Remak and W. G. Smith, for libellant.
R. K. Scott, for respondent.

KANE, District Judge (after stating the nature of the libel and answer). The facts as before me in proof, are these. The libellant was a steerage passenger from Rotterdam to the United States, on board the vessel which the respondent commanded. Among the regulations for the government of the passengers was one forbidding them to use any of the canvass, cordage, or other property of the ship, without permission. This, it is said, had been more than once broken by the libellant, and he had been reprimanded in consequence, when on the 29th of June, being on the high seas, he was charged by the captain with having taken a small piece, or rag as some of the witnesses call it, of tarred canvass, to assist in kindling the fire, at which he was cooking his dinner. The witnesses to the transaction did not understand English, and do not speak of the reprimand which followed; they say, however, that the libellant, who speaks their language, distinctly and repeatedly denied that he had committed the offence, and they do not say that he did so in a disrespectful or threatening manner. The captain thereupon snatched the burning canvass from the fire and struck the libellant with it several blows in the face, following up the attack as the libellant retreated by blows of the fist, which made his nose bleed. One of the witnesses for the defence added that at this time the libellant had a stick of fire wood in one hand and a chain-hook in the other, which he had taken up for the purpose either of defence or menace; but it is evident that he made no use of either, and it seemed most probable that he was about to employ them in the adjustment of his cooking fire. After thus striking the libellant with the fragment of canvass and with his fist, the captain retired to his cabin; and immediately returned with a small cord, with which he proceeded to whip the libellant severely. The libellant again retreated, making no defense, and crying loudly for mercy, but the beating continued till he had received, according to the different witnesses, from twelve to thirty stripes over the back, arms, and neck, when some of the passengers interfered. The libel-

lant was clad in a shirt and trowsers, and the lashes were severe enough, some of them, to break the skin, drawing the blood, and leaving wounds, that were still open, according to one witness, at the end of a fortnight.

It is added in almost all the depositions on both sides that the libellant was not acceptable to those on board. He is said to have been extremely regardless of personal cleanliness, offensive in his manners, and frequently engaged in disputes and even fights with his fellow passengers. He was generally, if not universally, designated as "the Jew," and seems to have been the object of common dislike to the passengers and inferior officers. It is not, however, in proof, that he was at anytime the aggressor, and it would seem that the gross language which he applied to the captain, though not in his presence, was provoked by the beating which he had received shortly before. I have attended to the libellant's offensive bearing, and to his unpopularity on board the vessel, which are testified to by the witnesses, because, on the other hand, they negative the idea of partiality towards him in their representations here, and because they present the only palliation which the proofs, as I have analyzed them, enable me to find for the captain's conduct.

Such are the facts upon which I am now to pass. They establish, beyond question, the trespass complained of, and they fail to show any legal justification on the part of the respondent. The law invests the master of a ship at sea with a high and responsible discretion. He has the absolute charge of his vessel, the absolute command of his crew, and a necessary control over his passengers. He may make proper regulations for their government, such as may ensure their safety, promote the general comfort, and preserve decent order; and these regulations he may enforce by all temperate and needful exercise of power. But here his authority over his passengers finds its limits, and he is a trespasser if he goes beyond it. He must show not only a breach of regulation before venturing to use force towards any one of them, but also that there was a clear necessity for the exercise of that degree of force. He is not to punish an infraction of mere police rules, by striking a passenger with his fist, or beating him with a rope's end; still less is he to do this before he has exhausted all milder and less degrading means of vindicating the order of the ship. Courteous request, patience and renewed remonstrance or reprimand, and at least just so much restraint, and, if that be unavailing, just so much active force, and no more, as the exigency may call for,—these are the legitimate rights of the captain over his passengers. They are to be exercised deliberately, and with moderation, without any haste or rudeness, and after patient examination of the facts; and I have no hesitation in adding, that no punishment higher than a reprimand, should ever be inflicted on a passenger, without a conference with the other officers of the ship, and an entry of the facts on the log-book. The only exception to this rule should be that of necessity, present or imminent; resistance to "acts of violence by a prompt reaction of lawful force, as in the disorders of commencing mutiny,—cases which speak for themselves and are of unavoidable dispensation." Lord Stowell in The Agincourt, 1 Hagg. Adm. 271. I fully adopt the language of Lord Tenterden, as cited by Chief Justice Tindall in Murray v. Moultrie, 6 Car. & P. 472, that even in the case of a mariner, (how much more in that of a passenger,)—"it is always desirable, and indeed the duty of the captain, to institute an inquiry, and have the result of it entered upon the log-book. It is his duty because, by availing himself of the advice of others, he prevents himself from acting solely on his own feelings, which may be excited, and it is his interest, because it furnishes evidence in his favor, to be used on the day of trial."

Captain Ames, whose general good character appears to be well established, and whose conduct towards the rest of his passengers is spoken of in terms of commendation, has erred grievously in his estimate of his rights over the libellant, or he has been led away by his passions. The libellant has been injured. He may have violated the proper rules of the ship,—he may have offended much against all who were on board by gross disregard of the proprieties of social life,—he may have been of a quarrelsome temper, or too willing to resent what he considered a sneer at his religious faith. All this does not excuse the captain's violence towards him, and, sitting here as a judge of admiralty, it is my duty, not only to the libellant but to all who may follow him as emigrants to this country, to decree such damages as may leave no doubt of the protecting power of the law over passengers on the high seas. Considering, however, that this is not the only proceeding in which the captain may be visited for his error, (and anxious to avoid a precedent which may invite too general recourse to the admiralty in cases which, like this, are better fitted for the action of the jury), I am unwilling to mulct him in aggravated damages.

I decree for the libellant, and that the respondent do pay him one hundred dollars for his damages, together with full costs.